RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

| | |
|---|---|
| LINDA JENESKI, And Class of Similarly Situated Individuals, PLAINTIFFS, -vs.- CITY OF WORCESTER, MASS.; STEPHEN H. WILLAND, DONALD H. ANDERSON, CARLENE BULL, ROBERT ~~THOMAS~~ J. HENNIGAN, JR., and D.S. DAVID M MOORE, Individually; DEFENDANTS. | NO. _____ 05-40019 FDS |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT, AND APPLICATION FOR TEMPORARY RESTRAINT AND SHOW CAUSE, AND FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

COMES NOW LINDA JENESKI and invokes the jurisdiction of this Honorable Court to award her affirmative relief, temporary restraint and show cause, and temporary and permanent injunctive relief against the above captioned parties in their corporate or individual capacities, as hereinafter set forth. LINDA JENESKI also invokes this Court's jurisdiction to seek affirmative relief for a Class of Similarly Situated Individuals pursuant to FED. R. CIV. P. 23.

### I. JURISDICTION

1.  This Court has jurisdiction in that the civil actions hereinafter pled arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. The Constitutional deprivations are those of due process of law and equal protection of the laws, U.S. CONST. Amends. V and XIV, as statutorily implemented at 42 U.S.C. § 1983 *et seq*. The Court also has supplemental

jurisdiction pursuant to 28 U.S.C. § 1367(a) in that the state tort law claims herein form part of the same case or controversy under Article III of the United States Constitution.

## II. PARTIES

2. Plaintiff LINDA JENESKI is a citizen of Worcester County, Massachusetts. She has the capacity to sue in that she can demonstrate an injury in fact, causation, and redressability. The nature of the Plaintiff and Putative Class's injury is deprivation of constitutionally protected due process and equal protection of the law that is the proximate cause of their economic damages.

3. The putative CLASS of similarly situated individuals are those who, like LINDA JENESKI, have been deprived of due process and equal protection of the law, to wit, those who have been unequally deprived of the rights and protections afforded to all citizens of the Commonwealth of Massachusetts under its Civil Service Laws, MASS. GEN. L. ch. 31 *et seq.*

4. Defendant CITY OF WORCESTER is a Massachusetts municipal corporation that may be served through its City Clerk, Mr. David Rushford at Worcester City Hall, 455 Main St., Worcester, MA 01608.

5. Defendant STEPHEN R. WILLAND is a natural person and resident of Worcester County, MA. He may be served at his principal place of business at c/o Regional Employment Board, 44 Front St., 3rd Floor, Worcester, MA 01608. He is named herein in his individual capacity.

6. Defendant DONALD H. ANDERSON is a natural person and resident of Worcester County, MA. He may be served at his principal place of business at c/o Workforce Central, 44 Front St., 7th Floor, Worcester, MA 01608. He is named herein in his individual capacity.

7. Defendant CARLENE BULL is a natural person and resident of Worcester County, MA. She may be served at her principal place of business at c/o Workforce Central, 44 Front St., 7th Floor, Worcester, MA. She is named herein in her individual capacity.

8. Defendant ROBERT J. HENNIGAN, JR. is a natural person and resident of Worcester County, MA. He may be served at his principal place of business at 390 Main St., Worcester, MA 01608. He is named herein in his individual capacity.

9. Defendant DAVID M. MOORE is a natural person and resident of Worcester County, MA. He may be served at his principal place of business at c/o Office of the City Solicitor, City Hall Room 301, 455 Main St., Worcester, MA 01608. He is named herein in his individual capacity.

### III. CLASS CERTIFICATION

10. Class certification is sought in this case pursuant to FED. R. CIV. P. 23(a) in that the claims of LINDA JENESKI raise questions of law and fact common to a class of similarly situated individuals, her claims are typical of the class, the class is so large that joinder of all members is impracticable, and she and her counsel will adequately protect the interests os the class.

### IV. VENUE

11. Venue is proper in the District of Massachusetts, Central Division pursuant to 28 U.S.C. § 1391.

### V. FACTS

12. Plaintiff is a Master's Degreed professional. In 1988 plaintiff became the supervisor of the Career Assessment Unit stationed at the Welfare Offices of the so-called City Manager's Office of Employment and Training (CMOET).[1] Grant implementation was a major part of plaintiff's responsibilities. Plaintiff thus became involved in so-called "authorized spend-downs," i.e., alternative

---

[1] The CMOET anagram has significance for the illegal conduct that gives rise to this lawsuit. By adding the prefix "City Manager" to city departments, the defendant City of Worcester has been able, since 1972, to unlawfully circumvent the State's civil service laws, MASS. GEN. L. ch 31, by "historically considering" those offices "exempt." In 2004, the City has admitted that it needs state legislative approval to exempt these departments. This conduct is criminalized in the civil service laws. This is the criminal conduct at the state level that enables the federal due process and equal protection violations.

ways to use state and federal funds to serve clients in a manner prescribed by law.

13. In 1993 or 1994, plaintiff inquired of defendant BULL about excess welfare-to-work earnings and why they were *not* being used to extend client services in the manner intended by law.[2] Plaintiff was told by defendant WILLAND it was not part of her job.

14. From 1994 until her abrupt discharge in 2002, Plaintiff would question the BULL defendant about the propriety of charging time on time-sheets to grants other than those on which she actually worked. Plaintiff became concerned enough about this practice that she would not sign time sheets until she received confirmation, preferably in writing, from the department director or the fiscal coordinator, the ANDERSON and BULL defendants, respectively. Plaintiff believes that unless restrained *ex-parte*, this and other critical evidence will be altered or disappear.[3]

15. Between August 1998 and July 2000, the federal funding program known by plaintiff as the Job Training Partnership Act (JTPA) was superseded by the new Workforce Investment Act (WIA). Thus, among the office staff, there was much discussion about the differences between "Jitpa" and "Weeah," i.e., the "firewall of integrity" and "separation" required by WIA between the Regional Employment Board (REB) and her office (CMOET).[4]

16. Between July 2000 and September 2002, plaintiff suspected that earned but unexpended welfare funds, in which her unit was involved, were being used to support the Regional Employment Board but she was unaware, until advised recently by counsel, of the felony implications

---

[2] What the funds were actually being used for would only appear later, *infra*. Nevertheless, in hindsight, it appears that at this point she was beginning to get some perception of misapplication of funds in violation, later learned, of 18 U.S.C. 666.

[3] Thus, the request *infra* for *ex-parte* temporary restraint or alternative request that this matter be sealed and referred by the Court immediately to the United States Attorney. In any event, Plaintiff hereby discharges her obligations pursuant to 18 U.S.C. § 4, the federal misprision of felony statute.

[4] *See* 28 U.S.C. § 2832(f)(1)(A).

of this conduct on the part of the WILLAND defendant.

17. From 2001 until her abrupt and wrongful termination in September 2002, plaintiff worked as a trainer state-wide and earned additional funds for CMOET which she suspected were being used by the Regional Employment Board Director, the WILLAND defendant.[5]

18. Regarding the above mentioned "additional funds," Plaintiff asked the ANDERSON defendant how the time should be entered in the time sheet. ANDERSON forwarded the question to the BULL defendant who told me not to enter it on the time-sheet, thus, in retrospect, providing the WILLAND, ANDERSON, and BULL defendants with another surplus source of funds.

19. Prior to the plaintiff's abrupt "layoff" in September 2002, she and other staff members had been informed by the WILLAND defendant of the need for early retirements. Some staff members offered hourly reductions to save co-worker's jobs. However, plaintiff had the temerity to challenge the WILLAND defendant's assertions of insufficient funds in light of a new $800,000.00 grant. The WILLAND defendant demurred and plaintiff was discharged in September 2002. A co-worker, Paul Quinn was also discharged, but he was later re-hired.

20. After her discharge, plaintiff retained the HENNIGAN defendant to represent her. She was advised to file a Title VII age and sex discrimination claim. HENNIGAN did not disclose that he was the author of the City's 1996 Plan of Reorganization which explicitly stated that the

---

[5] At this point plaintiff perceives that the conduct of the WILLAND defendant is merely inappropriate in that although extravagant, the expenditure of funds does not appear to her to be a conversion for personal use. To the contrary, see 18 U.S.C. 666 and *United States v. Westmoreland*, 841 F.2d 572, 576 (5th Cir. 1988), cert. denied, 488 U.S. 820 (1988)(Congress desired to protect the integrity of federal funds by assuring the integrity of the organization or agencies that receive them); see also *United States v. Rooney*, 986 F.2d 31, 34 (2nd Cir. 1993). For the use of "misapplication," see Jury Instruction 6.18.666A which, when applied here, means that to "misapply" means to use the funds or property of City of Worcester knowing that such use is unauthorized, or unjustifiable, or unlawful. Misapplication includes the wrongful taking or use of the money or property of City of Worcester by him as its Agent, for his own benefit, the use or benefit of some other person, or an unauthorized purpose, even if such use benefitted the City of Worcester.

department in which plaintiff worked was to be called "Executive Office of Employment and Training," quotation marks original. Thus, HENNIGAN was aware of the civil service exemption "scam" perpetrated by falsely prefacing "City Manager" to the departmental title. Instead, plaintiff spent in excess of $10,000.00 with HENNIGAN to pursue a fruitless claim before the Massachusetts Commission Against Discrimination (MCAD).

21.     Several days before a probable cause hearing before the MCAD, plaintiff learned in the Worcester Telegram & Gazette (T&G) that HENNIGAN had been hired by the defendant City to represent it as a defendant in an employment discrimination case in federal court in Boston. She confronted the HENNIGAN with the patent disloyalty and lack of disclosure and discharged him. A subsequent review of the HENNIGAN work product led the MCAD to dismiss for lack of presentation of any admissible evidence.[6]

22.     The MCAD action was not without benefit to the plaintiff, however. In the course of discovery in that case, plaintiff timely learned of the slush-fund of welfare monies used to support the WILLAND defendant's extravagant executive life-style as evidenced in Exhibit "A" attached hereto and incorporated herein by reference as if set for at length.

23.     One "piece-of-the-puzzle" that precipitates this action is the new City Manager's 2004 Plan of Reorganization in which it is admitted that city departments that have "historically been considered exempt from civil service" now, indeed, require approval by the state legislature. The 2004

---

[6] Plaintiff had a "slam dunk" direct evidence case had the deposition of her co-worker Mr. Quinn been taken. Instead, all that was submitted to the MCAD was Ms. Jeneski's hearsay affidavit which did not even comport with the requirements of Rule 56 for first hand knowledge. One cannot but conclude that plaintiff's perception of disloyalty had come to fruition. It is also significant for purposes of the TRO request that the HENNIGAN defendant, while representing the defendant City in an employment matter, also, according to the Worcester Telegram & Gazette (T&G), represented the current City Manager, Michael O'Brien, former parks director, in his City Manager's employment contract negotiations with the City in 2004. Thus appears the circumstantial evidence which points to conspiratorial conduct of the City Solicitor, the MOORE defendant.

Plan also continues to refer to the defunct Job Training and Partnership Act in an apparent reference to the ongoing violations of 28 U.S.C. 2832(f)(1)(A).[7]

24. The other "piece-of-the puzzle" presented at the MCAD probable cause hearing in which, for the first time, an attorney representing City announced representation for the legislative correct "Executive Office of Employment and Training." Upon information and belief, that attorney is also a former City Solicitor (or assistant) who had a hand in either crafting or subsequently implementing the 1972 Executive Order with initiated "City Manager's" exemption. Thus, that attorney, Mr. D. Moschos, will be, at the very least, a fact witness in this case.

## VI. FIRST COUNT: VIOLATION OF CIVIL RIGHTS UNDER 1983

25. Plaintiff realleges pars. 12-23 in support of this claim.

26.. Defendant City of Worcester is the party-respondent this claim.

27. At time of trial, plaintiff will prove that the conduct complained of (summarized colloquially as the unlawful "civil service exemption scam,") deprived her and the class of due process and equal protection of the law as prohibited in Amends. V and XIV of the United States Constitution, as implemented in 42 U.S.C. § 1983. She also pleads that this constitutional deprivation is the proximate cause of the economic damages sustained by her and the Class. She also pleads for reasonable and necessary attorney's fees for herself and the Class pursuant to 28 U.S.C. § 1988.

## VII. SECOND COUNT: CONSPIRACY TO VIOLATE CIVIL RIGHTS

28. Plaintiff realleges pars. 12-23 in support of this claim.

29. All defendants are parties-respondent to her claim of conspiracy and relief is sought

---

[7] Thus, from 1972 until present, an entire class or persons has been deprived of due process and equal protection and that denial has been the subject of repeated and well documented (i.e., admissions in state court), fraudulent misrepresentations by the defendant City which freezes the statutes of limitations for the class over the 32 year period.

against all the defendants jointly and severally; the Class plaintiffs' claim is asserted against defendant City of Worcester only.

30. At time of trial, plaintiff will prove that the defendants joined in a conspiracy to deprive her of her rights to due process and equal protection of the law in that they (a) had a meeting of the minds, (b) jointly used unlawful means to achieve unlawful ends, and (c) that the conspiracy is the proximate cause of the economic damages sustained by her and the Class. She also pleads for reasonable and necessary attorney's fees for herself and the Class pursuant to 28 U.S.C. § 1988.

## VIII. THIRD COUNT: WRONGFUL DISCHARGE

31. Plaintiff realleges pars. 12-23 in support of this claim.

32. Defendants City of Worcester and WILLAND, ANDERSON, and BULL are the parties-respondent this claim for which relief is sought jointly and severally.

33. At time of trial, plaintiff will prove that the conduct of which she complains amounts to a wrongful discharge perpetrated against her to conceal criminal conduct of the defendants and that that discharge is the proximate cause of her economic damages for which she seeks both ordinary and exemplary damages.

## IX. FOURTH COUNT: TORTIOUS INTERFERENCE IN CONTRACT

34. Plaintiff realleges pars. 20-23 in support of this claim.

35. Defendant City of Worcester is the party-respondent to this cause of action.

36. At time of trial, plaintiff will prove that this defendant intentionally and tortiously interfered in her attorney-client relationship with the HENNIGAN defendant with the intent to perpetrate unlawful acts for which the City can itself be held criminally liable under *U.S. v. Bank of New England*. She further pleads that this conduct is the proximate cause of her economic damages for which she seeks both compensatory and exemplary damages as provided by law.

## X. FIFTH COUNT: BREACH OF CONTRACT AND FIDUCIARY DUTY

37. Plaintiff realleges pars. 20-23 in support of this claim.

38. Defendant HENNIGAN is the party-respondent to this cause of action.

39. At time of trial, plaintiff will prove that this defendant intentionally and tortiously breached his contract of employment and its related fiduciary obligations to her. She further pleads that this conduct is the proximate cause of her economic damages for which she seeks both compensatory and exemplary damages as provided by law.

## XI. SIXTH COUNT: CONSPIRACY TO BREACH CONTRACT AND FIDUCIARY DUTY

40. Plaintiff realleges pars. 20-23 in support of this claim.

41. Defendant CITY, HENNIGAN, and MOORE are the parties respondent to this cause of action from which she seeks relief jointly and severally.

42. At time of trial, plaintiff will prove that this defendants intentionally and tortiously conspired to breach the attorney client contract and its related fiduciary obligations to her. She further that (a) there was a meeting of the minds among the defendants, (b) to achieve an unlawful end using unlawful means and (c) that the conspiracy is the proximate cause of her economic damages for which she seeks both compensatory and exemplary damages as provided by law.

## XII.

43. Plaintiff further pleads that all statutes of limitations with respect to herself and the putative class are tolled by the doctrine of fraudulent concealment.

## XIII. MOTION FOR CLASS CERTIFICATION

44. Plaintiff moves pursuant to FED. R. CIV. P. 23 that at an appropriate time to be determined by the Court, the matter of class certification be heard and determined.

## XIII. *EX-PARTE* REQUEST FOR TRO AND SHOW CAUSE

45. Plaintiff pleads that unless a TRO issues against all defendants, she will suffer irreparable harm in that, as alleged above and verified below, plaintiff believes that defendants will alter, conceal, or destroy evidence that is crucial to her claims and to the maintenance of the jurisdiction of this Court. The harm is imminent, in that once alerted to the criminal dimensions of this case, motive arises imminently to alter, conceal, or destroy evidence. Plaintiff further pleads that unless a TRO issue, and evidence is destroyed, she will have no other adequate remedy at law. She further pleads that because of the significant public record extant in this case, that she is likely to prevail on the merits. She also pleads that any potential injury to her far outweighs any injury sustained by any of the defendants if injunctive relief were granted. She further pleads that injunctive relief would have a positive effect on the public interests involved. She further pleads that the TRO issue *ex-parte* in that once alerted to the potential for criminal liability, defendants will immediately be motivated to alter, conceal, or destroy evidence. Finally, because of the nature of the conduct involved and the inherent public interests involved, that a bond be set in a *de minimis* amount.

46. Plaintiff also requests, for the reasons identified above (n. 42), that the TRO contain a provision for all defendants to appear and show cause why the temporary relief and additional relief not be imposed by the Court for the duration of this litigation (temporary injunction).

47. The specific temporary injunctive relief and show cause provisions are set forth in a proposed Order of Temporary Restraint and Show Cause filed contemporaneously and incorporated herein by reference as if set forth at length.

## XIV. REQUEST FOR PERMANENT INJUNCTION

48. Plaintiff also requests that upon completion of trial of this case, a permanent injunction issue to prevent further violations of the unlawful conduct cited herein.

## XIV. REQUEST FOR RELIEF

49. Plaintiff asks that TRO and show cause orders issue *ex-parte* and that upon notice and hearing, she have the temporary injunctive relief sought. Upon trial of the cause, she asks that she and the Class have the damages sought in specified in each count. She also requests class certification. She also asks for permanent injunctive relief. She also asks for reasonable and necessary attorneys' fees as provided by law. She finally asks for such other and further relief, general or special, whether at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,

DANIEL J. SHEA, P.C.

By: _____
DANIEL J. SHEA
B.B.O.# 652896
1928 West Bell Street
Houston, TX 77019-4814
(713) 942-7500 Telephone
(713) 942-7507 Telecopier
(832) 647-3612 Mobile
DJS7500@aol.com

## VERIFICATION OF LINDA JENESKI

I, the undersigned LINDA JENESKI hereby state under pains and penalties of perjury that I am the plaintiff in the above styled lawsuit. I am over the age of eighteen (18) years, mentally competent, and not otherwise disqualified by law from making an affidavit. I have supplied the facts (footnotes excepted) that are contained in the above pleadings at pars. 12-24. I have read and review those facts as set forth above. I have first hand knowledge of those facts, except where otherwise indicated as being on information and belief, and those facts are true and correct. I further verify that the Temporary Restraint and Show Cause Orders requested are needed for the reasons pled above.

_____
LINDA JENESKI



City Manager's Office of Employment & Training
Reconciliation of Organization 31S459 (Performance Earnings)
From Inception 1997 through June 30, 2003

**Cash Received:**

| | | |
|---|---|---|
| From FY93 Welfare Training | $ | 132,998.46 |
| From FY94 Welfare Training | | 78,594.87 |
| From FY95 Welfare Training | | 29,505.77 |
| From FY96 Welfare Training | | 212,959.69 |
| From FY97 Welfare Training | | 170,574.99 |
| From FY98 Welfare Training | | 106,848.54 |
| From FY99 Welfare Training | | 218,462.87 |
| From FY00 Welfare Training | | 165,467.05 |
| From FY01 Welfare Training | | 100,045.02 |
| From FY02 Welfare Training | | 32,118.74 |
| From 31S113 FY99 Title III - transfer for exps. no longer needed | | 2,097.15 |
| From Performance Earnings II (from FY00 admin cost pool 31S117) | | 34,177.34 |
| Additional Earnings from FY00 Refund (deposit 03/13/02) | | 2,274.14 |
| **Total Cash Received** | $ | 1,286,124.63 |

**Expenses:**

| | | |
|---|---|---|
| FY99 Mass Jobs REB (31S110) | $ | 42,896.09 |
| FY00 Vets (31S151) | | 218.13 |
| Registration to attend annual meeting | | 36.00 |
| Admin Expenses | | 39,161.45 |
| SRW - Car | | 14,665.95 |
| Transfer to FY99 Title IIC (31S112) | | 20,253.85 |
| Transfer to FY99 Title III (31S113) | | 2,097.15 |
| Transfer to FY99 Operations (31S115) | | 7,919.94 |
| FY00 REB (31S137) | | 23,457.61 |
| FY00 Admin Costpool 31S142 | | 18,057.95 |
| Guertins Graphic - T-Shirts Cancer Walk FY2002 | | 2,450.00 |
| **Total Expenses:** | $ | 171,214.12 |

**Loans:**

| | |
|---|---|
| Outstanding loan @ 06/30/03 31S198 | 50,000.00 |
| Outstanding loan @ 06/30/03 31S201 | 15,000.00 |

EXH. "A"

| | | |
|---|---:|---:|
| Outstanding loan @ 06/30/03 31S202 | | 20,000.00 |
| Outstanding loan @ 06/30/03 31S208 | | 50,000.00 |
| Outstanding loan @ 06/30/03 31S209 | | 50,000.00 |
| Outstanding loan @ 06/30/03 31S212 | | 5,000.00 |
| Outstanding loan @ 06/30/03 31S213 | | 40,000.00 |
| Outstanding loan @ 06/30/03 31S214 | | 60,000.00 |
| Outstanding loan @ 06/30/03 31S215 | | 10,000.00 |
| Outstanding loan @ 06/30/03 31S219 | | 10,000.00 |
| Outstanding loan @ 06/30/03 31S224 | | 100,000.00 |
| Outstanding loan @ 06/30/03 31S228 | | 10,000.00 |
| Outstanding loan @ 06/30/03 31S230 | | 2,000.00 |
| Outstanding loan @ 06/30/03 31S231 | | 50,000.00 |
| Outstanding loan @ 06/30/03 31S601 | | 25,000.00 |
| **Total Loans Outstanding** | $ | 497,000.00 |

| | | |
|---|---:|---:|
| **Cash on Hand** | $ | 617,910.51 |
| **Cash on Hand per G/L** | $ | 617,910.51 |
| Difference: | $ | — |

File Name: 31S459
Last update: 07/02/03
hsm

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
LINDA JENESKI + CLASS

**DEFENDANTS**
CITY OF WORCESTER, STEPHEN WILLAND, DONALD ANDERSON, CARLENE BULL, ROBERT HENNIGAN, DAVID MOORE

(b) County of Residence of First Listed Plaintiff: Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: WORCESTER
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
DANIEL J. SHEA, PC, 713 942 7500
1928 W. BELL ST HOUSTON, TX 77019

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |  | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☒ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC 1983
Brief description of cause:
EQUAL P + DUE PR. LEADS TO WRONGFUL DSCHG.

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE: 1/28/05
SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _LINDA JENESKI v._
   _CITY OF WORCESTER_

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,       *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

   ___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   ___ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ___ V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                                   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
                                                                   YES ☐    NO ☒
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                                   YES ☐    NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                                   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                                                   YES ☒    NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division ☐        Central Division ☒        Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☐        Central Division ☐        Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions) N/A
                                                                   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _DANIEL J. SHEA  BBO# 652836_
ADDRESS _1928 W. Bell St. Houston, TX 77019_
TELEPHONE NO. _713-942-7500_         _CELL: 832-647-3612_

Coversheetlocal.wpd - 10/17/02)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| LINDA JENESKI, And Class of Similarly Situated Individuals, PLAINTIFFS, -vs.- CITY OF WORCESTER, MASS.; STEPHEN H. WILLAND, DONALD H. ANDERSON, CARLENE BULL, ~~Robert~~ Thomas J. HENNIGAN, JR., and DAVID M MOORE, Individually; DEFENDANTS. | NO. 05-40019 FDS |

## ORDER OF TEMPORARY RESTRAINT AND

## TO APPEAR AND SHOW CAUSE

On the ____ day of January 2005, Plaintiff LINDA JENESKI APPEARED and through verified pleadings asserted pled that unless a TRO issues against all defendants, she will suffer irreparable harm in that, as alleged in her verified pleadings, she believes that defendants will alter, conceal, or destroy evidence that is crucial to her claims and to the maintenance of the jurisdiction of this Court. She further pled and verified that the harm to her and the putative Class is imminent, in that once alerted to the criminal dimensions of this case, motive arises in the defendants imminently to alter, conceal, or destroy evidence. Plaintiff further asserted through verified pleadings that unless a TRO issue, and evidence is destroyed, she will have no other adequate remedy at law. She further asserted through verified pleadings that because of the significant public record extant in this case, that she is likely to prevail on the merits. She also asserted through verified pleadings that any potential injury to her far outweighs any injury sustained by any of the defendants if injunctive relief

Page 1 of 3

were granted. She further asserted through verified pleadings that injunctive relief would have a positive effect on the public interests involved. She further asserted through verified pleadings that the TRO issue *ex-parte* in that once alerted to the potential for criminal liability, defendants will immediately be motivated to alter, conceal, or destroy evidence. Finally, she asserted through verified pleadings that because of the nature of the conduct involved and the inherent public interests involved, that a bond be set in a *de minimis* amount. The Court FINDS these arguments to be MERITORIOUS.

IT IS, THEREFORE ORDERED AS FOLLOWS:

Each defendant or anyone acting in concert with any of them, is immediately ORDERED to refrain from in any manner altering, concealing, or destroying any records, written, electronic, or otherwise, to which explicit reference is made in the pleadings in this case or that in any way relate to the claims of LINDA JENESKI and the putative class.

The Defendants CITY, WILLAND, ANDERSON, BULL and MOORE shall immediately CEASE AND DESIST from any and all violations of the federal Workforce Investment Act, 28 U.S.C. § 2832 *et seq*.

The Defendant CITY OF WORCESTER is HEREBY ORDERED to immediately take all necessary steps to prevent any of its employees including but not limited to defendants WILLAND, ANDERSON, BULL, and MOORE from violating the provisions of this ORDER, and CITY is FURTHER ORDERED to document the steps taken in compliance with this ORDER and be prepared to present proof of compliance at least five days in advance of the hearing hereinafter set forth. Proof of compliance shall include compliance with the provision designed to protect evidence from alteration, concealment, or destruction, and proof of compliance with this Court's ORDER to cease and desist from further violations of the Workforce Investment Act.

All defendants are FURTHER ORDERED to appear before this Court on the _____ day of February, 2005 at _____ a./p.m. and show cause why these and other Orders should not issue to control the disposition of this litigation.

Bond is hereby set, *de minimis*, at the sum of _____.


DATE AND TIME OF ISSUE:_____



_____
UNITED STATES DISTRICT JUDGE