**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

LINDA JENESKI,                             §
And Class of Similarly                     §
Situated Individuals;                      §
                                           §
              Plaintiffs;                  §
                                           §
       -vs.-                               §
                                           §
CITY OF WORCESTER, MASS.;                  §            NO. 05-40019-FDS
STEPHEN H. WILLAND, DONALD                 §
H. ANDERSON, CARLENE BULL,                 §
ROBERT J. HENNIGAN, JR., DAVID             §
M. MOORE, Individually; and MASSA-         §
CHUSETTS ADMINISTRATOR OF                  §
HUMAN RESOURCES;                           §
                                           §
              Defendants.                  §

**PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED PLEADING**

**TO MAKE A MORE DEFINITE STATEMENT AND ADD ADDITIONAL PARTY**

**WITH SUPPORTING AUTHORITY**

LINDA JENESKI, on her own behalf and that of the putative class, requests leave of court

to file an amended pleading, to wit, *Plaintiff's First Amended Complaint With Rule 19 Additional*

*Party.*   She provides supporting authority herein.    The proposed pleading is filed

contemporaneously.

A.  Introduction

1.       Plaintiff is LINDA JENESKI.  She is an individual and potential lead member of a

Class of Similarly Situated Individuals.

2.       Defendants are the City of Worcester, various employees thereof, Attorney Robert

J. Hennigan, Jr., and additional Rule 19 Party: Administrator, Division of Human Resources,

Commonwealth of Massachusetts.

3.    Plaintiff sued defendants City, State, and their employees for civil rights violations. In addition, defendant Hennigan is sued as part of the civil rights conspiracy and for supplemental state law claims of breach of fiduciary duty and breach of contract.  The Rule 19 party is added as part of the civil rights conspiracy and to effectuate permanent injunctive relief.

4.    All Defendants have answered and leave is sought to add the Rule 19 party.

5.    An initial conference was held with the Court on November 21, 2005 and the matter of pleading amendment and additional parties was discussed.  The Court ordered the pleadings amended or clarified.  The court also set a deadline of December 21, 2005 for addition of parties. This motion is responsive to that conference and the Order issued therefrom.

### B.  Argument

6.    Unless the opposing party can show prejudice, bad faith, or undue delay, a court should grant leave to file an amended pleading.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962).  Leave to amend should be freely given when justice so requires.  FED. R. CIV. P. 15(a); *Walton v. Mental Health Ass'n*, 168 F.3d 661, 665 (3d Cir. 1999).

7.    With respect to the addition of parties, Rule 19(a) ". . . requires the court to join any person who is necessary to effectuate complete relief, where such joinder is feasible."  *Jota v. Texaco, Inc.*, 157 F.3d 153, 162 (2nd Cir. 1998).

8.    The court should allow the filing of Plaintiff's amended complaint because (a) it provides the more definite statement of the case ordered by the Court and (b) it contains an additional party defendant without whom the permanent injunctive relief requested cannot be afforded to the Plaintiff and putative Class.  Specifically, the "Administrator," Defendant MASSACHUSETTS ADMINISTRATOR OF HUMAN RESOURCES, is a statutorily created

position within the Massachusetts Executive Office of Administration and Finance charged, in pertinent part, "[t]o administer, enforce and comply with the civil service law and rules." MASS. GEN. L. ch. 31 § 5(a). Without the presence of this party, complete relief cannot be granted.

9.     The defendants will not be prejudiced by Plaintiff's amended complaint because, in the case of the Hennigan defendant, a more definite statement was pled for by him and the Court ordered the re-pleading. Neither Defendant can be prejudiced because this amendment and additional party take place at a preliminary stage in the litigation.

10.    Plaintiff is filing her amended pleading along with this motion.

C.  Conclusion

11.    For the reasons set forth herein, Plaintiff asks the court to grant leave to file the amended pleading in accordance with its Order and to effect the addition of a party.

Respectfully submitted,

DANIEL J. SHEA, P.C.

By:    /s/Daniel J. Shea, ECF
     DANIEL J. SHEA
     B.B.O.# 652896
     1928 West Bell Street
     Houston, TX 77019-4814
     (713) 942-7500 Telephone
     (713) 942-7507 Telecopier
     (832) 647-3612 Mobile

     ATTORNEY FOR LINDA JENESKI
     AND PUTATIVE CLASS

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | | |
|---|---|---|
| LINDA JENESKI,<br>And Class of Similarly<br>Situated Individuals; | §<br>§<br>§<br>§ | |
| Plaintiffs; | §<br>§ | |
| -vs.- | §<br>§ | |
| CITY OF WORCESTER, MASS.;<br>STEPHEN H. WILLAND, DONALD<br>H. ANDERSON, CARLENE BULL,<br>ROBERT J. HENNIGAN, JR., DAVID<br>M. MOORE, Individually; and MASS-<br>ACHUSETTS ADMINISTRATOR OF<br>HUMAN RESOURCES; | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. 05-40019-FDS |
| Defendants. | § | |

<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

<u>**WITH RULE 19 ADDITIONAL PARTY**</u>

COMES NOW LINDA JENESKI and, pursuant to the Court's Orders rendered on November 21, 2005, FED. R. CIV. P. 15, and subject to Leave of Court to make a more definite statement and add an additional party pursuant to FED R. CIV. P. 19, she amends her Complaint to invoke the jurisdiction of this Honorable Court to award her affirmative relief, and permanent injunctive relief against the above captioned parties in their corporate or individual capacities, as hereinafter set forth. LINDA JENESKI also invokes this Court's jurisdiction to seek affirmative relief for a Class of Similarly Situated Individuals pursuant to FED. R. CIV. P. 23.

I. <u>JURISDICTION</u>

1.      This Court has jurisdiction in that the civil actions hereinafter pled arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. The Constitutional depriva-

tions are those of due process of law and equal protection of the laws, U.S. CONST. Amends. V and XIV, as statutorily implemented at 42 U.S.C. §§ 1983, and 1985(3) *et seq.* The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) in that the state tort law claims herein form part of the same case or controversy under Article III of the United States Constitution.

## II.  PARTIES

2.     Plaintiff LINDA JENESKI is a citizen of Worcester County, Massachusetts. She has the capacity to sue in that she can demonstrate an injury in fact, causation, and redressability. The nature of the Plaintiff and Putative Class's injury is deprivation of constitutionally protected due process and equal protection of the law that is the proximate cause of their economic damages.

3.     The putative CLASS of similarly situated individuals are those who, like LINDA JENESKI, have been deprived of due process and equal protection of the law, to wit, those who have been unequally deprived of the rights and protections afforded to all citizens of the Commonwealth of Massachusetts under its Civil Service Laws, MASS. GEN. L. ch. 31 *et seq.* More definitely, the Class consists of those individuals against whom adverse employment decisions were made without the affected employee having an opportunity, equal to other citizens of Massachusetts, to challenge those decisions under the civil service laws.

4.     Defendant CITY OF WORCESTER is a Massachusetts municipal corporation that was served through its City Clerk, Mr. David Rushford at Worcester City Hall, 455 Main St., Worcester, MA 01608. CITY has appeared and answered.

5.     Defendant STEPHEN R. WILLAND is a natural person and resident of Worcester County, MA. He was be served at his principal place of business at c/o Regional Employment Board, 44 Front St., 3rd Floor, Worcester, MA 01608. He is named herein in his individual capacity in addition to being an employee of CITY. He has appeared and answered.

6.      Defendant DONALD H. ANDERSON is a natural person and resident of Worcester County, MA.  He was served at his principal place of business at c/o Workforce Central, 44 Front St., 7th Floor, Worcester, MA 01608.  He is named herein in his individual capacity in addition to being an employee of CITY.  He has appeared and answered.

7.      Defendant CARLENE BULL is a natural person and resident of Worcester County, MA.  She was served at her principal place of business at c/o Workforce Central, 44 Front St., 7th Floor, Worcester, MA.  She is named herein in her individual capacity in addition to being an employee of CITY.  She has appeared and answered.

8.      Defendant ROBERT J. HENNIGAN, JR. is a natural person and resident of Worcester County, MA.  He was served at his principal place of business at 390 Main St., Worcester, MA 01608.  He is named herein in his individual capacity in addition to being a former employee of CITY.  He has appeared and answered.

9.      Defendant DAVID M. MOORE is a natural person and resident of Worcester County, MA.  He may be served at his principal place of business at c/o Office of the City Solicitor, City Hall Room 301, 455 Main St., Worcester, MA 01608.  He is named herein in his individual capacity in addition to being an employee of CITY.  He has appeared and answered.

10.     Defendant, MASSACHUSETTS ADMINISTRATOR OF HUMAN RESOURCES is a statutorily created position within the Massachusetts Executive Office of Administration and Finance charged, in pertinent part, "[t]o administer, enforce and comply with the civil service law and rules."  MASS. GEN. L. ch. 31 §§ 5(a) and 77.  Service may be effected upon the "Administrator" though the Office of the Attorney General, Commonwealth of Massachusetts, Government Bureau, One Ashburton Place, Room 2019, Boston, MA 02108-1698 and upon General Counsel, Human Resources Division, One Ashburton Place, Room 207, Boston, MA 02108-1518.

III. CLASS CERTIFICATION

11.    Class certification is sought in this case pursuant to FED. R. CIV. P. 23(a) in that the

claims of LINDA JENESKI raise questions of law and fact common to a class of similarly situated

individuals, her claims are typical of the class, the class is so large that joinder of all members is

impracticable, and she and her counsel will adequately protect the interests of the class.

IV. VENUE

12.    Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391.

V. FACTS

13.    The constitutional violations that form the basis of this suit began with the illegal

issuance by City of Worcester of an Executive Order on November 13, 1972 which prescribes, *inter*

*alia*, that ". . . all officers and employees of the Executive Office are executive appointees and,

therefore, shall not be subject to the requirements of the Civil Service Law." That Order is attached

hereto as Exhibit "A," and incorporated herein by reference as if set forth at length.[1]

14.    Plaintiff is a Master's Degreed professional. In 1988 plaintiff became the supervisor

of the Career Assessment Unit stationed at the Welfare Offices of the so-called City Manager's

Office of Employment and Training (CMOET).[2]  Grant implementation was a major part of

plaintiff's responsibilities. Plaintiff thus became involved in so-called "authorized spend-downs,"

---

[1]  The Massachusetts Civil Service Law exempts certain individuals from civil service protection where it states, in pertinent part, that "[t]he following shall be exempt from the civil service law and rules, unless expressly made subject thereto by statute: . . . City and town managers and assistant city or town managers, and administrative assistants, secretaries, stenographers, clerks, telephone operators and messengers connected with the offices of city councils, town councils, mayors, city managers, town managers and selectmen." MASS. GEN. L. ch. 31 § 48.

[2]  The CMOET anagram has significance for the illegal conduct that gives rise to this lawsuit. By adding the prefix "City Manager" to city departments, the defendant City of Worcester has been able, since 1972, to unlawfully circumvent the State's civil service laws, MASS. GEN. L. ch 31 *et seq.*, by "historically considering" those offices "exempt." In 2004, the City has admitted that it needs state legislative approval to exempt these departments. This conduct is criminalized in the civil service laws. *See* MASS. GEN. L. ch. 31 § 74. This is the criminal conduct at the state level that enables the federal due process and equal protection violations.

*i.e.*, alternative ways to use state and federal funds to serve clients in a manner prescribed by law.

15.     In 1993 or 1994, plaintiff inquired of defendant BULL about excess welfare-to-work earnings and why they were *not* being used to extend client services in the manner intended by law.[3] Plaintiff was told by defendant WILLAND it was not part of her job.  Upon information and belief, the BULL defendant reports to the ANDERSON defendant on the organizational chart of "Workforce Central," but *de facto*, reports to the WILLAND defendant.

16.     From 1994 until her abrupt discharge in 2002, Plaintiff would question the BULL defendant about the propriety of charging time on time-sheets to grants other than those on which she actually worked.  Plaintiff became concerned enough about this practice that she would not sign time sheets until she received confirmation, preferably in writing, from the department director or the fiscal coordinator, the ANDERSON and BULL defendants, respectively.

17.     Between August 1998 and July 2000, the federal funding program known by plaintiff as the Job Training Partnership Act (JTPA) was superseded by the new Workforce Investment Act (WIA).  Thus, among the office staff, there was much discussion about the differences between "Jitpa" "Weeah," e.g., the "firewall of integrity" and "separation" required by WIA between the Regional Employment Board (REB) – [under WIA the Workforce Investment Board (WIB)] and her office (CMOET).[4]

18.     Between July 2000 and September 2002, plaintiff suspected that earned but unexpended welfare funds, in which her unit was involved, were being used to support the Regional Employment Board (at that point, still not renamed as the Workforce Investment Board "WIB" as

---

[3] What the funds were actually being used for would only appear later, *infra*.  Nevertheless, in hindsight, it appears that at this point she was beginning to get some perception of misapplication of funds in violation, later learned, of 18 U.S.C. § 666.

[4] *See* 29 U.S.C. § 2832(f)(1)(A).

required by WIA) but she was unaware, until advised by counsel, of the felony implications of this conduct on the part of the WILLAND defendant.

19.     From 2001 until her abrupt and wrongful termination in September 2002, plaintiff worked as a trainer, state-wide, and earned additional funds for CMOET which she suspected were being used by the Regional Employment Board Director, the WILLAND defendant.[5]

20.     Regarding the above mentioned "additional funds," Plaintiff asked the ANDERSON defendant how the time should be entered in the time sheet.  ANDERSON forwarded the question to the BULL defendant who told plaintiff not to enter it on the time-sheet, thus providing the WILLAND, ANDERSON, and BULL defendants with another surplus source of funds.

21.     Prior to the plaintiff's abrupt "layoff" in September 2002, she and other staff members had been informed by the WILLAND defendant of the need for early retirements.  Some staff members offered hourly reductions to save co-worker's jobs.  However, plaintiff had the temerity to challenge the WILLAND defendant's assertions of insufficient funds in light of a new $800,000.00 grant.  The WILLAND defendant demurred and plaintiff was discharged in September 2002.  A co-worker, Paul Quinn was also discharged, but he was later re-hired.  The lack of civil service protection was common knowledge among the employees based on the Executive Order.

22.     After her discharge, plaintiff retained the HENNIGAN defendant and his firm to represent her.  She was advised by HENNIGAN To file a Title VII age and sex discrimination claim.

---

[5]  At this point plaintiff perceives that the conduct of the WILLAND defendant is merely inappropriate in that although extravagant, the expenditure of funds does not appear to her to be a conversion for personal use.  To the contrary, *see* 18 U.S.C. § 666 and *United States v. Westmoreland,* 841 F.2d 572, 576 (5th Cir. 1988), *cert. denied,* 488 U.S. 820 (1988)(Congress desired to protect the integrity of federal funds by assuring the integrity of the organization or agencies that receive them); *see also United States v. Rooney,* 986 F.2d 31, 34 (2nd Cir. 1993).  For the use of "misapplication," see Jury Instruction 6.18.666A which, when applied here, means that to "misapply" means to use the funds or property of City of Worcester knowing that such use is unauthorized, or unjustifiable, or unlawful.  Misapplication includes the wrongful taking or use of the money or property of City of Worcester by him as its Agent, for his own benefit, the use or benefit of some other person, or an unauthorized purpose, even if such use benefitted the City of Worcester.

HENNIGAN did not disclose that he was the author of or in any way involved with the development of the City's 1996 Plan of Reorganization which explicitly stated that the department in which plaintiff worked was to be called "Executive Office of Employment and Training," [quotation marks original], rather than "City Manager's Office of Employment and Training 'CMOET,'" as it was so named at all times relevant herein.  Thus, from 1996 onward, if not before, HENNIGAN was aware of the 1972 unlawful civil service exemption that created a due process and equal protection violation by falsely prefacing "City Manager" departmental titles to unlawfully exempt employees like her from civil service protections by improperly invoking MASS. GEN. L. ch. 31 § 48.  Indeed, Ms. Jeneski had told Hennigan that her Franklin Hampshire Service Delivery Area counter-part, Sara Wing, had mentioned to her the applicability of civil service redress.  In addition, Attorney Elaine Baltas, acting as a consultant to Ms. Jeneski, provided the HENNIGAN firm with a copy of the above cited civil service laws.  Ms. Baltas, laid-off *circa* 1996, is a potential class member. Under the circumstances, HENNIGAN, as an attorney, had a duty to disclose his actual knowledge of this state of illegality and its implications for her wrongful discharge.  Instead, plaintiff spent in excess of $10,000.00 with HENNIGAN to pursue a fruitless claim before the Massachusetts Commission Against Discrimination (MCAD) when instead, the matters brought fourth in this suit were highly relevant to the unlawful motives behind her wrongful discharge and arguably, could have been brought forward in this forum in this manner.  In effect. HENNIGAN had actual knowledge of the due federal due process and equal protection violations arising out of the unlawful civil service exemption, yet chose not to do so because of his conflicted relationship with the City as set forth more fully below.

23.    The City's relationships are further complicated.  Upon information and belief, the "Administrator" of the Massachusetts Department of Human Resources, rather than exercising its

non-delegable enforcement obligations vis a vis City of Worcester, has nevertheless delegated its duties "[t]o administer, enforce and comply with the civil service law and rules" under MASS. GEN. L. ch. 31 § 5(a) to the City of Worcester Department of Human Resources thus placing the City in charge of its own statutory oversight.  Upon information and belief, this improper delegation of duty is the subject of a "Memorandum of Understanding" between the Human Resources Departments of the State and City and forms part of the civil rights conspiracy involved in this case.

24.    Several days before a probable cause hearing before the MCAD, plaintiff learned in the <u>Worcester Telegram & Gazette</u> (T&G) that HENNIGAN had been hired by the defendant City to represent it as a defendant in an employment discrimination case in federal court in Boston.  She confronted the HENNIGAN with the patent disloyalty and lack of disclosure and discharged him. A subsequent review of the HENNIGAN work product led the MCAD to dismiss for lack of presentation of any admissible evidence.[6]

25.    The MCAD action was not without benefit to the plaintiff, however.  In the course of discovery in that case, plaintiff timely learned of the slush-fund of welfare monies used to support the WILLAND defendant's extravagant executive life-style as evidenced in Exhibit "B," attached hereto and incorporated herein by reference as if set for at length.

26.    One "piece-of the-puzzle" that precipitates this action is the new City Manager's 2004 Plan of Reorganization in which it is admitted that city departments that have "historically been

---

[6] Plaintiff had a strong direct evidence case had the deposition of her co-worker Mr. Quinn been taken.  Instead, all that was submitted to the MCAD was Ms. Jeneski's hearsay affidavit which did not even comport with the requirements of Rule 56 for first hand knowledge.  One cannot but conclude that plaintiff's perception of disloyalty had come to fruition.  It is also significant that the HENNIGAN defendant, while representing the defendant City in an employment matter, also, according to the <u>Worcester Telegram & Gazette</u> (T&G), represented the current City Manager, Michael O'Brien, former parks director, in his City Manager's employment contract negotiations with the City in 2004. Thus appears the circumstantial evidence which points to conspiratorial conduct of the City Solicitor, the  MOORE defendant.

considered exempt from civil service" now, indeed, require approval by the state legislature.  The 2004 Plan also continues to refer to the defunct Job Training and Partnership Act in an apparent reference to the ongoing violations of 28 U.S.C. 2832(f)(1)(A).[7]

27.     The other "piece-of-the puzzle" presented at the MCAD probable cause hearing in which, for the first time, an attorney representing City announced representation for the legislatively correct "Executive Office of Employment and Training."  Upon information and belief, that attorney is also a former City Solicitor (or assistant) who had a hand in either crafting or subsequently implementing the 1972 Executive Order which initiated the "City Manager's" unlawful exemption.  Thus, that attorney, Mr. D. Moschos, will be, at the very least, a fact witness in this case.

## VI.  FIRST COUNT: VIOLATION OF CIVIL RIGHTS UNDER § 1983

28.     Plaintiff re-alleges pars. 13-27 in support of this claim.

29.     Defendant City of Worcester is the party-respondent this claim.

30.     At time of trial, plaintiff will prove that the conduct complained of (summarized as the unlawful civil service exemption) deprived her and the class of due process and equal protection of the civil service laws of the Commonwealth as prohibited in Amends. V and XIV of the United States Constitution, as implemented in 42 U.S.C. § 1983.  She also pleads that this constitutional deprivation is the proximate cause of the economic damages sustained by her and the Class.  She also pleads for reasonable and necessary attorney's fees for herself and the Class under 42 U.S.C. § 1988.

## VII.  SECOND COUNT:

## CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER § 1985(3)

---

[7]  Thus, from 1972 until present, an entire class of persons has been deprived of due process and equal protection of the civil service laws and that denial has been the subject of repeated and well documented admissions by the defendant City which freezes the statutes of limitations for the class over the 32 year period.

31.     Plaintiff re-alleges pars. 13-27 in support of this claim.

32.     All defendants, including ADMINISTRATOR, are parties-respondent to her claim of conspiracy and relief is sought against all the defendants jointly and severally; the Class plaintiff's claim is asserted against defendant City of Worcester only at this time.

33.     At time of trial, plaintiff will prove that the defendants joined in a conspiracy to deprive her of her rights to due process and equal protection of the law in the manner prohibited by 42 U.S.C. § 1985(3) and that that conspiracy is the proximate cause of the economic damages sustained by her and the Class.  She also pleads for reasonable and necessary attorney's fees for herself and the Class pursuant to 42 U.S.C. § 1988.

VIII.  THIRD COUNT: WRONGFUL DISCHARGE

34.     Plaintiff re-alleges pars. 13-27 in support of this claim.

35.     Defendants City of Worcester and WILLAND, ANDERSON, and BULL are the parties-respondent this claim for which relief is sought jointly and severally.

36.     At time of trial, plaintiff will prove that the conduct of which she complains amounts to a wrongful discharge perpetrated against her to conceal criminal conduct of the defendants and that discharge is the proximate cause of her economic damages for which she seeks both ordinary and exemplary damages.  Plaintiff believes that other acts of wrongful discharge have occurred to the Class Members but for the unlawful violation of the civil service laws as set forth herein.

IX.  FOURTH COUNT: TORTIOUS INTERFERENCE IN CONTRACT

37.     Plaintiff re-alleges pars. 13-22 in support of this claim.

38.     Defendant City of Worcester is the party-respondent to this cause of action.

39.     At time of trial, plaintiff will prove that this defendant intentionally and tortiously interfered in her attorney-client relationship with the HENNIGAN defendant with the intent to

perpetrate unlawful acts for which the City can itself be held criminally liable under *U.S. v. Bank of New England*.  She further pleads that this conduct is the proximate cause of her economic damages for which she seeks both compensatory and exemplary damages as provided by law.

### X.  FIFTH COUNT: BREACH OF CONTRACT AND FIDUCIARY DUTY

40.     Plaintiff re-alleges pars. 13-22 in support of this claim.

41.     Defendant HENNIGAN is the party-respondent to this cause of action.

42.     At time of trial, plaintiff will prove that this defendant intentionally and tortiously breached his contract of employment and its related fiduciary obligations to her.  She further pleads that this conduct is the proximate cause of her economic damages for which she seeks both compensatory and exemplary damages as provided by law.

### XI.  SIXTH COUNT: CONSPIRACY TO BREACH CONTRACT
### AND FIDUCIARY DUTY

43.     Plaintiff re-alleges pars. 13-22 in support of this claim.

44.     Defendant CITY, HENNIGAN, and MOORE are the parties respondent to this cause of action from which she seeks relief jointly and severally.

45.     At time of trial, plaintiff will prove that this defendants intentionally and tortiously conspired to breach the attorney client contract and its related fiduciary obligations to her.  She further that (a) there was a meeting of the minds among the defendants, (b) to achieve an unlawful end using unlawful means and (c) that the conspiracy is the proximate cause of her economic damages for which she seeks both compensatory and exemplary damages as provided by law.

### XII.  LIMITATIONS AND IMMUNITY

46.     Plaintiff further pleads that all statutes of limitations with respect to herself and the putative class are tolled by the doctrine of fraudulent concealment, back to 1972.

47.     The state parties have no immunity to the civil rights claims.  *See Monell, et al. v. Dept. of Social Svc's, City of New York*, 436 U.S. 658 (1978).

## XIII.  MOTION FOR CLASS CERTIFICATION

48.     Plaintiff moves pursuant to FED. R. CIV. P. 23 that at an appropriate time to be determined by the Court, the matter of class certification be heard and determined.

## XIV.  REQUEST FOR PERMANENT INJUNCTION

49.     Plaintiff also requests that upon completion of trial of this case, a permanent injunction issue to prevent further violations of the unlawful conduct cited herein.

## XV.  REQUEST FOR RELIEF

50.     Plaintiff requests that the additional defendant be cited to appear.  Upon trial of the cause, she asks that she and the Class have the damages sought in specified in each count.  She also requests class certification.  She also asks for permanent injunctive relief.  She also asks for reasonable and necessary attorneys' fees as provided by law.  She asks for such other and further relief, general or special, whether at law or in equity, to which she may be justly entitled.

Respectfully submitted,

DANIEL J. SHEA, P.C.


By:___/s/Daniel J. Shea, ECF_____
         DANIEL J. SHEA
         B.B.O.# 652896
         1928 West Bell Street
         Houston, TX 77019-4814
         (713) 942-7500 Telephone
         (713) 942-7507 Telecopier
         (832) 647-3612 Mobile

ATTORNEY FOR LINDA JENESKI
AND PUTATIVE CLASS

AN EXECUTIVE ORDER RELATIVE TO THE
ORGANIZATION OF THE EXECUTIVE OFFICE
OF THE CITY MANAGER

WHEREAS: The City operates under a Council-Manager form of govern-
ment (G.L. Chapter 43, Section 93, et. seq.); and

WHEREAS: The City Manager is the Chief Executive Officer of the
City of Worcester (G.L. Chapter 43, Section 104); and

WHEREAS: The City Manager may establish regulations by virtue
of Chapter 43, Section 106; and

WHEREAS: The federal government has established various programs
under the jurisdiction of local chief executives,
including Law Enforcement Planning (Executive Order #3);
Manpower Planning (Executive Order #2) and 701 Planning
(Executive Order #7); and

WHEREAS: The City Council has placed the administration of the
Human Rights Commission within the Executive Office
of the City Manager;

NOW, THEREFORE, I, Francis J. McGrath, by virtue of the authority
vested in me as City Manager do hereby order as follows:

1) That the Executive Office of the City Manager
shall consist of the following units:

a) Administrative Office

b) Criminal Justice Planning Office

c) Manpower Planning Office

d) Planning and Community Development Office
e) Office of Human Rights
f) Office of Human Service Programs

2) That the officer in charge of the above mentioned
Offices shall be as follows:

**EXHIBIT**

tabbies®

" A "

- 2 -

    a) Administrative Assistant to the City Manager:
       Administrative Office (D. Bunting)

    b) Administrator of Law Enforcement Planning:
       Criminal Justice Planning Office (J. Wheeler)

    c) Director of Manpower Planning:  Manpower
       Planning Office (R. Makela)

    d) Planning Director:  Planning and Community
       Development Office (G. McNeil)

    e) Executive Director, Human Rights Commission:
       Office of Human Rights (S. Levinson)

    f) Director, Office of Human Service Programs:
       Office of Human Service Programs (J. Ford)

3) That staff supervision shall be exercised over the
above offices as follows:

    a) Administrative Office:  City Manager

    b) Criminal Justice Planning Office:  City Manager

    c) Manpower Planning Office:  Director of Human
       Service Programs

    d) Planning and Community Development Office:
       Planning Director

    e) Office of Human Rights:  Human Rights Commission

    f) Office of Human Service Programs: Director of
       Human Service Programs

4) That the coordination of the various offices shall be
exercised by the Assistant to the City Manager  (Executive).

5) That it shall be the duty and responsibility of each
officer in charge:

    a) To prepare annually the goals and objectives
       of the office for approval of the staff
       supervisor and City Manager.

    b) To prepare annually, by December 1, for the
       Budget Officer, the administrative budget of
       the office and to coordinate their fiscal
       affairs with the budget officer.

    c) To prepare the program and program budget

d) To direct, supervise and evaluate employees of the office, including establishing work schedules, assignments and performance requirements.

e) To establish internal administrative procedures for the office in accordance with this Order and other applicable guidelines.

f) To keep the City Manager advised on a regular basis of significant program developments, changes in law affecting his area, and personnel actions.

g) To perform the duties prescribed by ordinance or executive order.

h) To perform such other duties as may be required by the staff supervisor or the City Manager.

6) That relationships between the Executive Office or its units, and legislative bodies or other governmental units, shall be reserved exclusively for the City Manager.

7) That all units shall maintain books and records in accordance with established business procedures and shall keep separate and distinct books and records for federal and state grant-in-aid funds and programs.

8) That no unit, except the Administrative Office, shall use stationery headings which does not include therein a verbalization of their unit designation.  Units may use the following headings:

Executive Office of City Manager

Office of _____

or

City Manager's Office of _____

9) That all officers and employees of the Executive Office are executive appointees and, therefore, shall not be subject to the requirements of the Civil Service Law.  Except

- 4 -

..or Civil Service, all appointees shall be entitled to the same benefits received by all other City employees.

10) That all officers and employees shall notify the City Manager of any outside interest including consulting work or significant business activities that they may perform. All officers and employees shall devote their full time during business hours to their duties and shall be available for such assignments that may be required after office hours.

11) That no officer or employee shall participate in partisan political activities or have any connection whatsoever with any political activities involving municipal elections in the City of Worcester.

12) That no officer or employee shall be authorized to sign in behalf of the City Manager or be authorized to use his name, except the Executive or Administrative Assistants of the City Manager.

13) That every officer and employee within thirty days of his employment shall read and be acquainted with the Conflict of Interest Law (G.L. Chapter 268A).

14) That all units shall comply with the statutes, ordinances and City's Administrative Directives and Executive Orders as may be applicable.

15) That each employee, upon his appointment, shall be given a copy of this order by the officer in charge of his unit.

Ordered at City Hall
November 13, 1972

Francis J. McGrath
City Manager

Revised: 10-1-75

City Manager's Office of Employment & Training
Reconciliation of Organization 31S459 (Performance Earnings)
From Inception 1997 through June 30, 2003



**EXHIBIT**
tabbies
" *B* "

**Cash Received:**

| | | |
|---|---|---:|
| From FY93 Welfare Training | $ | 132,998.46 |
| From FY94 Welfare Training | | 78,594.87 |
| From FY95 Welfare Training | | 29,505.77 |
| From FY96 Welfare Training | | 212,959.69 |
| From FY97 Welfare Training | | 170,574.99 |
| From FY98 Welfare Training | | 106,848.54 |
| From FY99 Welfare Training | | 218,462.87 |
| From FY00 Welfare Training | | 165,467.05 |
| From FY01 Welfare Training | | 100,045.02 |
| From FY02 Welfare Training | | 32,118.74 |
| From 31S113 FY99 Title III - transfer for exps. no longer needed | | 2,097.15 |
| From Performance Earnings II (from FY00 admin cost pool 31S117) | | 34,177.34 |
| Additional Earnings from FY00 Refund (deposit 03/13/02) | | 2,274.14 |
| **Total Cash Received** | $ | 1,286,124.63 |

**Expenses:**

| | | |
|---|---|---:|
| FY99 Mass Jobs REB (31S110) | $ | 42,896.09 |
| FY00 Vets (31S151) | | 218.13 |
| Registration to attend annual meeting | | 36.00 |
| Admin Expenses | | 39,161.45 |
| SRW - Car | | 14,665.95 |
| Transfer to FY99 Title IIC (31S112) | | 20,253.85 |
| Transfer to FY99 Title III (31S113) | | 2,097.15 |
| Transfer to FY99 Operations (31S115) | | 7,919.94 |
| FY00 REB (31S137) | | 23,457.61 |
| FY00 Admin Costpool 31S142 | | 18,057.95 |
| Guertins Graphic - T-Shirts Cancer Walk  FY2002 | | 2,450.00 |
| **Total Expenses:** | $ | 171,214.12 |

**Loans:**

| | |
|---|---:|
| Outstanding loan @ 06/30/03 31S198 | 50,000.00 |
| Outstanding loan @ 06/30/03 31S201 | 15,000.00 |

| | | |
|---|---|---:|
| Outstanding loan @ 06/30/03 31S202 | | 20,000.00 |
| Outstanding loan @ 06/30/03 31S208 | | 50,000.00 |
| Outstanding loan @ 06/30/03 31S209 | | 50,000.00 |
| Outstanding loan @ 06/30/03 31S212 | | 5,000.00 |
| Outstanding loan @ 06/30/03 31S213 | | 40,000.00 |
| Outstanding loan @ 06/30/03 31S214 | | 60,000.00 |
| Outstanding loan @ 06/30/03 31S215 | | 10,000.00 |
| Outstanding loan @ 06/30/03 31S219 | | 10,000.00 |
| Outstanding loan @ 06/30/03 31S224 | | 100,000.00 |
| Outstanding loan @ 06/30/03 31S228 | | 10,000.00 |
| Outstanding loan @ 06/30/03 31S230 | | 2,000.00 |
| Outstanding loan @ 06/30/03 31S231 | | 50,000.00 |
| Outstanding loan @ 06/30/03 31S601 | | 25,000.00 |
| **Total Loans Outstanding** | $ | **497,000.00** |

| | | |
|---|---|---:|
| Cash on Hand | $ | 617,910.51 |
| Cash on Hand per G/L | $ | 617,910.51 |
| Difference: | $ | |

File Name: 31S459
Last update: 07/02/03
hsm

## DANIEL J. SHEA, P.C.
### 1928 WEST BELL STREET, HOUSTON, TX 77019-4814
### (713) 942-7500      (713) 942-7507 FACSIMILE      DJS7500@AOL.COM

DANIEL JOSEPH SHEA

ALSO ADMITTED IN
MASSACHUSETTS

November 28, 2005

Office of the Attorney General
Commonwealth of Massachusetts
Government Bureau
One Ashburton Place, Room 2019
Boston, MA 02108-1698

Office of the General Counsel
Human Resources Division
One Ashburton Place, Room 207
Boston, MA 02108-1518.

> RE: Case No. 05-40019-FDS; *Linda Jeneski et al. vs. City of Worcester et al.*; In
> the United States District Court for the District of Massachusetts, Central
> Division.

Dear Counsel:

Please be advised that a *Motion for Leave* has been filed in the captioned case. Leave is sought, *inter alia*, to add the Administrator, Division of Human Resources, as a Rule 19(a) Necessary Party. A courtesy copy of the *Motion for Leave* and the *First Amended Complaint With Rule 19 Additional Party* (with Exhibits "A" and "B") is enclosed.

We will keep you advised of the status of the *Motion for Leave* and, if granted, will consult with you on manner of service. In the interim, please do not hesitate to contact the undersigned if you have any questions.

Very truly yours,

Daniel J. Shea

cc:   Ms. Janet McGuiggan, w/o encl.
      Mr. Robert Murphy, with encl.