IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| LINDA JENESKI, And Class of Similarly Situated Individuals, | § § § § | |
| PLAINTIFFS, | § § | |
| -vs.- | § § | NO. 05-40019-FDS |
| CITY OF WORCESTER, MASS.; STEPHEN H. WILLAND, DONALD H. ANDERSON, CARLENE BULL, ROBERT J. HENNIGAN, JR., and DAVID M. MOORE, Individually; | § § § § § § § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT ROBERT J. HENNIGAN, JR.'S SECOND MOTION TO DISMISS

PLAINTIFF LINDA JENESKI opposes the *Motion to Dismiss Plaintiff's First Amended Complaint* of Defendant ROBERT J. HENNIGAN, JR. In this, his second such motion, he prematurely seeks to dismiss the *Plaintiff's First Amended Complaint* (Doc. # 26) which, as of the time of this filing, has yet to be admitted by the Court. Consequently, he fails to address *Plaintiff's Motion for Leave to File Amended Pleading to Make a More Definite Statement and Add Additional Party, With Supporting Authority* (Doc. #25). Thus, it appears that Mr. Hennigan waives any argument under FED. R. CIV. P. 15(a) and Plaintiff proceeds on the presumption that her *First Amended Complaint* is the live pleading. Plaintiff takes this as "written consent of the adverse party" under Rule 15(a) and responds on the merits accordingly.

Mr. Hennigan's motion boils down to issues of supplemental jurisdiction, sufficiency of pleadings under Rule 12(b)(6), and immunity. We address each, *seriatim.*

I. RESPONSE TO SPECIFIC GROUNDS ASSERTED FOR DISMISSAL

1. Subject Matter Jurisdictional Grounds

In his original *Memorandum* on the subject, Mr. Hennigan asserted that "[t]his court has no subject matter jurisdiction for the legal malpractice claim (Counts 5 and 6) . . . ." Mem. at p. 2 (Doc. #13). At the hearing on that subject, the court recognized that plaintiff had specifically pleaded that "The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) in that the state tort law claims herein form part of the same case or controversy under Article III of the United States Constitution."

In this second motion to dismiss, Mr. Hennigan recognizes supplemental jurisdiction but now argues that the Court should not exercise it. Motion at 8, par. D, (Doc. #30). In that regard, Mr. Hennigan argues that supplemental jurisdiction is discretionary, that it involves an examination of the totality of the circumstances, and involves issues such as economy, convenience, fairness, and the like, citing a line of three First Circuit cases. That reliance is misplaced.

In *Vera-Lozano v. International Broadcasting*, 50 F.3d 67 (1st Cir. 1995), cited by Mr. Hennigan, the First Circuit held that the trial court correctly retained supplemental jurisdiction on the principle that refusal is proper only ". . . if the state claim 'substantially predominates over the claim or claims over which the district court has original jurisdiction' or 'the claim raises a novel or complex issue of state law.'" *Id.* at 70, *citing* 28 U.S.C. §§ 3567(c)(1), (c)(2). In *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168 (1st Cit. 1995), also cited by Mr. Hennigan, the trial court had exercised supplemental jurisdiction over a supplemental state claim in a Title VII action. The trial court ultimately dismissed the Title VII claim. But even then, the First Circuit held that ". . . although the plaintiff's Title VII claim ultimately succumbed on the merits, it was *colorable when brought*. Consequently, the district court's power to exercise discretionary supplemental jurisdiction over a putative [state law] claim, extant at the time of trial, will remain intact on remand." *Id.* at

1177 (emphasis added). Finally, in *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249 (1st Cir. 1996), the last of the three cited by Mr. Hennigan, Judge Selya, again writing on the subject as he had in *Rodriguez,* found that the trial court properly retained ". . . 'jurisdiction over state law claims notwithstanding the early demise of all foundational federal claims.'" *Id.* at 257, *citing Rodriguez*, 57 F.3d at 1177.

Thus, Mr. Hennigan's reliance on *Vera-Lozano, Rodriguez*, and *Roche* is misplaced and in fact supports plaintiff's position that this court's exercise of supplemental jurisdiction is proper.

Mr. Hennigan next makes the blanket assertion that "*First Circuit Courts have consistently held that the federal courts lack subject matter jurisdiction over claims for legal malpractice and/or breach of contract*." Motion at 9 (emphasis added). This time, recourse is had to three non-published First Circuit cases, without expostulation.

In *Agbosasa v. Cooper*, No. 92-2421 (1st Cir. 6/14/1993)(unpublished, *see* 995 F.2d 1061), cited by Mr. Hennigan, the First Circuit agreed with the trial court that a *pro-se* convict ". . . appellant's Sixth Amendment [foundational] claim [ineffective assistance] was 'an impermissible attempt to collaterally attack plaintiff's conviction' and that Title 15 could not 'by any stretch of the imagination, be construed to cover the claims of legal malpractice the plaintiff has alleged.'" Thus, the Rodriguez "colorable when brought" test failed and the case understandably never makes mention of supplemental jurisdiction. In *Gonzalez v. Arana*, 45 F.3d 423 (1st Cir. 1995), also cited by Mr. Hennigan, "[t]he *sole* cause pleaded, however, [was] a cause of action in tort for legal malpractice" . . . ". . . because it 'arises under' federal law [28 U.S.C. § 1331]." *Id.* (emphasis added). There, of course, no foundational claim was asserted and supplemental jurisdiction was never at issue. Finally, in *Murray v. Perlow*, 96 Fed.Appx. 5 (1st Cir. 2004), the last of the three cited by Mr. Hennigan, in a brief *per curiam* opinion, the court found that the foundational constitutional claim was not cognizible and that the legal malpractice claim against the public

defender had no diversity jurisdiction, *citing* 28 U.S.C. § 1332.  Again, the foundational claim was not "colorable when brought."  Thus, Mr. Hennigan's blanket assertion that "First Circuit Courts have consistently held that the federal courts lack subject matter jurisdiction over claims for legal malpractice and/or breach of contract" is disingenuous at best.

Finally, Mr. Hennigan argues that the malpractice claim is predominant and thus, that the court may decline jurisdiction over the malpractice claim under 28 U.S.C. § 1367(c)(2).  The plaintiff contends that the malpractice and breach of fiduciary duty claims are part of the proximate causation of and thus subordinate to the foundational civil rights conspiracy claims, all of which arise from a common nucleus of operative facts.  Plaintiff leaves it to the Court's own judgment to review her assertions in this regard.

  2.  <u>Failure to State A Claim (Rule 12(b)(6))</u>

In her response to Mr. Hennigan's attempt to dismiss the original complaint, Plaintiff contended that in pars. 20-21 and footnote 6 of that pleading, facts sufficient to allege a conspiracy were set forth.  She had pleaded that Mr. Hennigan had actual knowledge of the true nature of her claim against the City and instead, working on the City's behalf, he pursued a fruitless claim against the City with the Massachusetts Commission Against Discrimination.  Instead, he should have pursued the very claim that forms the basis of this lawsuit, i.e., unequal application of the state's civil service laws which gives rise to the equal protection claim in this lawsuit.

In her *First Amended Complaint*, Plaintiff has expanded upon those allegations.

> After her discharge, plaintiff retained the HENNIGAN defendant and his firm to represent her.  She was advised by HENNIGAN to file a Title VII age and sex discrimination claim.  HENNIGAN did not disclose that he was the author of or in any way involved with the development of the City's 1996 Plan of Reorganization which explicitly stated that the department in which plaintiff worked was to be called "Executive Office of Employment and Training," [quotation marks original], rather than "City Manager's Office of Employment and Training 'CMOET,'" as it was so named at all times relevant herein.  Thus, from 1996 onward, *if not before*, HENNIGAN *was aware* of the 1972 unlawful civil service exemption that created

> a due process and equal protection violation by falsely prefacing "City Manager" to departmental titles to unlawfully exempt employees like her from civil service protections by improperly invoking MASS. GEN. L. ch. 31 § 48. Indeed, Ms. Jeneski had told Hennigan that her Franklin Hampshire Service Delivery Area counter-part, Sara Wing, had mentioned to her the applicability of civil service redress. In addition, Attorney Elaine Baltas, acting as a consultant to Ms. Jeneski, provided the HENNIGAN firm with a copy of the above cited civil service laws. Ms. Baltas, laid-off *circa* 1996, is a potential class member. Under the circumstances, HENNIGAN, as an attorney, *had a duty to disclose his actual knowledge of this state of illegality and its implications for her wrongful discharge.* Instead, plaintiff spent in excess of $10,000.00 with HENNIGAN to pursue a fruitless claim before the Massachusetts Commission Against Discrimination (MCAD) when instead, the matters brought fourth in this suit were highly relevant to the unlawful motives behind her wrongful discharge and arguably, could have been brought forward in this forum in this manner. In effect. HENNIGAN had actual knowledge of the federal due process and equal protection violations arising out of the unlawful civil service exemption, yet chose not to do so because of his conflicted relationship with the City as set forth more fully below.

Pl. 1st Am. Cplt. at par. 22 (emphasis added). This "more definite statement" sets forth Mr. Hennigan's "actual knowledge" of the illegal state of affairs of his former, and soon to be new employer, City of Worcester, on whose behalf he would breach his fiduciary duty to Ms. Jeneski.

> The *First Amended Complaint* continues:
>
> Several days before a probable cause hearing before the MCAD, plaintiff learned in the Worcester Telegram & Gazette (T&G) that HENNIGAN had been hired by the defendant City to represent it as a defendant in an employment discrimination case in federal court in Boston. She confronted HENNIGAN with the patent disloyalty and lack of disclosure and discharged him. A subsequent review of the HENNIGAN work product led the MCAD to dismiss for lack of presentation of any admissible evidence.

*Id.* at par. 24. Faced with these pleadings, Mr. Hennigan asserts that ". . . there are no factual allegations alleging that an agreement to breach the attorney-client contract and its fiduciary obligations, *express or otherwise*, existed among the City of Worcester, Moore, and Attorney Hennigan." Motion at 10 (emphasis added). Yet, he correctly asserts that ". . . a conspiracy may be implied from the circumstances." Motion at 10, *citing Hunt v. Weatherbee*, 626 F.Supp. 1097, 1107 (D.Mass. 1986), *citing Dickerson v. U.S. Steel Corp.*, 439 F.Supp. 55, 67 (E.D. Pa. 1977).

"The rules do not require the pleadings to detail the facts or plead legal theories." *Conley v. Gibson*, 355 U.S. 41,47, 78 S.Ct. 99, 103 (1957). "A complaint must simply give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506, 513, 122 S.Ct. 992, 998 (2002), *citing* FED. R. CIV. P. 8(a)(2). "But the pleadings must at least implicate the relevant issues." *McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger*, 280 F.3d 26, 38 (1st Cir. 2002). *See* 5 WRIGHT & MILLER § 1286. The exception to this "fair notice" rule involves "allegations of fraud or mistake [which] must be pleaded with particularity." *Swierkiewicz*, 534 U.S. at 513, 122 S.Ct. at 998, *citing* FED. R. CIV. P. 9(b).

Thus, Mr. Hennigan is on "fair notice" that Ms. Jeneski's allegations indicate that he was acting against her interests on the City's behalf. The Court must assume these facts are true for purposes of its analysis. *Davis v. Monroe Cty. Bd. of Education*, 526 U.S. 629, 633 (1999).

In short, even though Ms. Jeneski is not required to plead legal theories under *Conley*, she nevertheless pleads a specific count (No. II) of conspiracy to violate her civil rights as prohibited by 42 U.S.C. § 1985(3) and ". . . re-alleges pars. 13-27 in support of [that] claim." Pl. 1st Am. Cplt. at 9-10. She has thus complied with the fair notice pleading standard which ". . . relies on liberal discovery rules and summary judgment motions to define disputed facts *and issues* and to dispose of unmeritorious claims." *Swierkiewicz,* 534 U.S. at 513, 122 S.Ct. at 998 (emphasis added).

Finally, Mr. Hennigan complains that there are no facts alleged that show that conspiracy had an invidiously discriminatory *animus*, especially when, as here, the conspiracy involves deprivation of equal protection. In that regard, he relies on *Harrison v. Brooks*, 519 F.2d 1358 (1st Cir. 1975). That reliance, however, is misplaced. There, the *Harrison* plaintiffs had relied on an *animus* directed at their interests individually rather than alleging *animus* against an entire class of persons. In that regard, the plaintiff pleads the following allegations of mis-conduct by City of Worcester that incepted even prior to her employment but which nevertheless affects her and an

entire class of persons to this date.

> The constitutional violations that form the basis of this suit began with the illegal issuance by City of Worcester of an Executive Order on November 13, 1972 which prescribes, *inter alia*, that ". . . all officers and employees of the Executive Office are executive appointees and, therefore, shall not be subject to the requirements of the Civil Service Law." That Order is attached hereto as Exhibit "A," and incorporated herein by reference as if set forth at length. [Fn. 1]: The Massachusetts Civil Service Law exempts certain individuals from civil service protection where it states, in pertinent part, that "[t]he following shall be exempt from the civil service law and rules, unless expressly made subject thereto by statute: . . . City and town managers and assistant city or town managers, and administrative assistants, secretaries, stenographers, clerks, telephone operators and messengers connected with the offices of city councils, town councils, mayors, city managers, town managers and selectmen." MASS. GEN. L. ch. 31 § 48.

Pl. 1st Am. Cplt. at 4. In short, the entire class of persons affected by the civil service laws of the Commonwealth are all employees of the Commonwealth. The 1972 Order carves out an invidious class, meaning all City of Worcester executives and employees, and deprives that class of the civil service protections otherwise afforded to the entire class of civil-service-protected employees throughout the Commonwealth. The lack of equal protection is thus not personal to Ms. Jeneski, but invidious as to the Worcester class as a whole. Thus, that argument is unavailing.

      3.    <u>Immunity</u>

Mr. Hennigan claims he is immune from liability because at the time of his alleged involvement, he was a government official. In anticipation of that defense, Ms. Jeneski, in her pleading states specifically, that "[t]he state parties have no immunity to the civil rights claims. *See Monell, et al. v. Dept. of Social Svc's, City of New York*, 436 U.S. 658 (1978)." Pl. 1st Am. Cplt. at par. 47. That defense is unavailing under *Monell* and its progeny, is well settled law, and requires no further elaboration.

## II. REQUEST FOR RELIEF

Based on the foregoing arguments, Plaintiff Linda Jeneski asks the Court (a) to deny the *Motion to Dismiss the First Amended Complaint*, (b) to allow the filing of the *First Amended*

*Complaint* and citation and service on the Rule 19 Additional Party, (c) if requested, to alter the Docket Control Order in response to the Rule 19 Party's legitimate time needs, and (d) to thereafter allow the discovery process to continue in an orderly manner.

She also asks for such other and further relief to which she may show herself justly entitled.

Respectfully submitted,

DANIEL J. SHEA, P.C.

By: /s/Daniel J. Shea, ECF
DANIEL J. SHEA
B.B.O.# 652896
1928 West Bell Street
Houston, TX 77019-4814
(713) 942-7500 Telephone
(713) 942-7507 Telecopier
(832) 647-3612 Mobile

ATTORNEY FOR LINDA JENESKI
AND PUTATIVE CLASS